

U.S. Department of Justice

United States Attorney
Eastern District of New York

SLR:BDM:KKO
F. #2010V00608
F. #2012R00953

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 9, 2014

By Hand and ECF
The Honorable Arthur D. Spatt
United States District Court
Eastern District of New York
100 Federal Plaza
P.O. Box 9014
Central Islip, New York 11722

      Re:    United States v. Brian R. Callahan, *et al.*
               Criminal Docket No. 13-453 (ADS)

               United States v. Brian Raymond Callahan, *et al.*
               Civil Docket No. 12-1065 (ADS)

Dear Judge Spatt:

        The government respectfully writes in response to defendant Brian Callahan's motions filed on March 26, 2014, which seek permission for Sher Tremonte LLC to withdraw as his counsel in the above-captioned criminal and SEC enforcement cases. (13-CR-453, Docket nos. 46-48; 12-CV-1065, Docket nos. 211-13). Defendant Callahan requests that his counsel be permitted to withdraw if certain funds held in an attorney escrow account and other funds under the control of a court-appointed receiver in the SEC enforcement action are not released to pay his attorney's fees and expenses. (12-CV-1065, Docket nos. 208-209).

        Specifically, defendant Callahan seeks to have over $480,000 in attorney's fees and expenses paid from funds held by Horizon Millennium Investments, L.P. ("Horizon Millennium"), which were frozen and placed under the receiver's control pursuant to a temporary restraining order and preliminary injunction issued in the SEC enforcement action. (12-CV-1065, Docket nos. 4, 22 and 33). In addition, Defendant Callahan seeks to have approximately $26,000 of attorney's fees and expenses paid out of an escrow account held by Park & Jenson LLP, the law firm with which his counsel was formerly associated. (12-CV-1065, Docket no. 209, at 1, 4). That account was also apparently frozen at the same time as the funds held by Horizon Millennium. The government takes no position on the defendant's motions, but notes that the funds at issue are subject to forfeiture to the United States, for reasons discussed below.

I.     Background

On April 17, 2012, the government filed a Verified Complaint In Rem in a civil forfeiture proceeding captioned United States v. 272 Old Montauk Highway, *et al.*, 12-CV-1880 (ADS), which is also pending before Your Honor. Among other assets, that action seeks the forfeiture of all cooperative shares held by Distinctive Ventures, LLC which are associated with the Panoramic View oceanfront resort located in Montauk, New York (the "Distinctive Shares"), as property constituting or derived from proceeds traceable to securities fraud offenses. (12-CV-1880, Docket no. 1, at ¶¶ 4, 65-81, 102-104). The Verified Complaint alleges that, during the period from August 31, 2010 through and including November 1, 2011, at least $2.9 million was wired directly or indirectly from an account used by defendant Callahan to accept deposits from investors — HSBC Bank of Bermuda account number XXXXXXX9563 held in the name of Waterstreet Corporate Services (the "Waterstreet Account") — to pay loans secured by the Distinctive Shares. (12-CV-1880, Docket no. 1, at ¶¶ 72-79). Notably, during the period from approximately June 2010 through on or about March 16, 2011, investors in the Callahan funds wired over $21 million to the Waterstreet Account. (13-MJ-670, Docket no. 1, at ¶ 15).

On July 31, 2013, a grand jury returned a twenty-four count indictment charging defendant Brian Callahan, along with his brother-in-law Adam Manson, with conspiracy to commit securities and wire fraud, as well as substantive securities and wire fraud offenses, for their roles in operating a $96 million Ponzi scheme. (13-CR-453, Docket no. 1). The indictment alleges that between December 2006 and February 2012, defendant Callahan raised more than $118 million from at least forty investors in connection with four different investment funds that he managed, which included the Horizon Millennium fund. The indictment also included a criminal forfeiture allegation reflecting the government's intent to seek forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), of any property constituting or derived from proceeds of the charged wire and securities fraud-related offenses including, among other assets, the Distinctive Shares and two other parcels of real property. (13-CR-453, Docket no. 1, at ¶ 72).

The day after the indictment was returned, on August 1, 2014, agents of the Federal Bureau of Investigation also seized over $1.4 million of criminal proceeds on deposit in attorney escrow accounts held by defendant Manson's father, Barry Manson, pursuant to seizure warrants issued by United States Magistrate Judge William D. Wall. (13-MJ-670, Docket nos. 6-7). As set forth in the affidavit in support of those warrants, over $900,000 of the monies seized were traceable to investor funds deposited into the Waterstreet Account. (13-MJ-670, Docket no. 1, at ¶¶ 17-21, 22-26, 27-29).

II.    The Funds That Callahan Seeks To Have Released Are Subject To Forfeiture

To date, the government's investigation has revealed that approximately $25,000 on deposit in the escrow account of Park & Jensen, LLP, which defendant Callahan now seeks to have released, was derived from the Waterstreet Account. As described above, the Waterstreet Account received over $21 million of investor funds, which served as a factual basis for the government's civil and criminal forfeiture actions against the Distinctive

2

Shares, as well as the seizure of over $900,000 from attorney escrow accounts held by Barry Manson.  Specifically, a review of bank records confirms that on or about January 12, 2012, the sum of $25,000 was wired from the Waterstreet Account to Park & Jensen.  At least $25,000 of the approximately $26,000 that defendant Callahan seeks to have released is therefore subject to forfeiture as proceeds of securities fraud offenses, pursuant to 18 U.S.C. § 981(a)(1)(C).

The remainder of the monies that defendant Callahan seeks to have released are derived from the Horizon Millennium fund which, as charged in the indictment, was among the investment funds at the center of the Ponzi scheme orchestrated by the defendants.  (13-CR-453, Docket no. 1, at ¶¶ 2, 5, 22).  In this regard, Horizon Millennium transferred at least $6,125,000 from VP Bank Account Number XXXX2430 held in the name of Horizon Millennium to a New York-based hedge fund.  (12-CV-1065, Docket no. 11, at ¶ 5).  The government's investigation has revealed that these funds were derived solely from investors in the Callahan funds.  Accordingly, like the monies held by Park & Jensen from which defendant Callahan seeks to have his attorney's fees and expenses paid, these funds are also subject to forfeiture as proceeds of securities fraud offenses.

III.    Conclusion

At present, the government has not taken any action against the funds held by Horizon Millennium or in the Park & Jensen escrow account that defendant Callahan asks be released in order to pay his attorney's fees and expenses.  The government therefore takes no position on Callahan's motions for release of these funds.  For the reasons set forth above, however, these funds are subject to forfeiture to the United States.  Accordingly, to the extent that the Court is inclined to release any of the funds, the government respectfully requests permission to present an application for their seizure and/or restraint prior to any release in accordance with the provisions of 18 U.S.C. § 981(b), 21 U.S.C. § 853(e) and/or 21 U.S.C. § 853(f).

Thank you for Your Honor's consideration of this submission.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:   /s/
Christopher Caffarone
Brian D. Morris
Karin Orenstein
Winston Paes
Assistant U.S. Attorneys
(718) 254-7000

cc:    All Counsel of Record (By ECF)